ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2011 APR 21 AM 11:49
CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| PORTER WILKES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 309-053 |
| | ) | |
| W. SIGHTLER, | ) | |
| | ) | |
| Defendant. | ) | |

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

At the time of the events giving rise to the above-captioned case brought pursuant to 42 U.S.C. § 1983, Plaintiff was an inmate at Wheeler Correctional Facility ("WCF") in Alamo, Georgia. The case is now before the Court on the parties' cross motions for summary judgment. (Doc. nos. 36, 38.) Plaintiff responded to Defendant's motion (doc. no. 48) and, with the Court's permission, filed a second response (doc. nos. 49, 50). For the reasons set forth below, the Court **REPORTS AND RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, that Defendant's motion for summary judgment be **GRANTED**, that a final judgment be **ENTERED** in favor of Defendant, and that this civil action be **CLOSED**.

I. **PROCEDURAL BACKGROUND**

On August 18, 2009, the Court issued a Report and Recommendation ("R&R") that Plaintiff's complaint be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g)

(commonly known as the "three strikes" provision). (Doc. no. 3, pp. 2-4.) Plaintiff filed an objection alleging acts of retaliation and deliberate indifference to his serious medical needs. (See doc. no. 5.) Therefore, pursuant to the imminent danger exception to the three strikes rule, the Court vacated the August 18 R&R and ordered Plaintiff to submit an amended complaint. (Doc. no. 6.) Plaintiff submitted his amended complaint (doc. no. 9) and the Court issued an R&R on February 23, 2010, recommending that Plaintiff's claims be dismissed and the civil action be closed (doc. no. 17).[1] Plaintiff filed another objection on March 11, this time claiming, among other things, that Defendant, a physician at WCF, was continuing to refuse to treat Plaintiff's Hepatitis C. (See doc. no. 19.) The Honorable Dudley H. Bowen, Jr., United Stated District Judge, adopted the February 23 R&R of this Court, as modified, to allow Plaintiff to proceed with his Eighth Amendment claim against Defendant for deliberate indifference to a serious medical need with respect to Plaintiff's Hepatitis C. (Doc. no. 21.) Therefore, the Court recounts only the facts that are material to this one remaining claim.[2]

---

[1] In an intervening R&R the Court recommended that Plaintiff's case be dismissed as a sanction for abusing the judicial process. (Doc. no. 13.) However, Plaintiff objected, and the Court issued an Order vacating the R&R based, once again, on the imminent danger exception. (Doc. nos. 15, 16.)

[2] In his "Brief in Support of Motion for Summary Judgment," Plaintiff attempts to raise an additional Eighth Amendment claim based on the alleged refusal of Defendant and the other medical staff at WCF, to follow Plaintiff's medical diet profile. (Doc. no. 39, pp. 6-7.) Additionally, in his second response to Defendant's motion for summary judgment, Plaintiff attempts to raise claims against various staff at Coffee Correctional Facility- where he was transferred in December 2010. (Doc. no. 44; doc. no. 50, p. 3.) As explained above, Judge Bowen ruled in his adoption order that Plaintiff was limited to proceeding with his Eighth Amendment claim of deliberate indifference to a serious medical need based on his allegation that Defendant was refusing to treat Plaintiff's Hepatitis C. (Doc. no. 21, p. 3.) Therefore, the Court will not address the additional claims that were not allowed to proceed by Judge Bowen, that Plaintiff is, nonetheless, attempting to raise.

## II. FACTS

Plaintiff was diagnosed with Hepatitis C in 2000 while incarcerated at Coastal State Prison. (Doc. no. 36, Statement of Material Facts ("SMF"), ¶ 4.) It was at this time that Plaintiff began refusing care for his Hepatitis C. (Id. ¶ 5.) Plaintiff was transferred to WCF in September of 2008, and states that he did not see a doctor for some time after his arrival; however, there are inconsistencies in how long Plaintiff claims to have waited. For example, in his affidavit, Plaintiff states that he did not see a doctor until two months after arriving at WCF, whereas in his deposition, Plaintiff stated that he waited four months before seeing a doctor. (Doc. no. 38, Pl.'s Aff. ¶ 1; doc. no. 36, Ex. A, pp. 8-9.) In his deposition, Plaintiff said that the reason he needed to see the doctor was to get ointments for skin rashes and ibuprofen. (Doc. no. 36, Ex. A, p. 8.)

Plaintiff received his medical care from the WCF chronic clinic since his arrival at WCF. (Id., Frank Aff. ¶ 3.) Due to the clinic environment in which prisoners are seen, some times the scheduling of appointments has to be varied, or even delayed. (Id., SMF ¶ 7.) According to Defendant, Plaintiff's need for skin ointment and ibuprofen would not have been an urgent matter. (Id., Sightler Aff. ¶ 4.) Plaintiff states that, during his first visit with Defendant, there was no discussion regarding possible treatment for Plaintiff's Hepatitis C or the possibility of Plaintiff seeing a specialist. (Doc. no. 38, Pl.'s Aff. ¶ 1.) Plaintiff avers that Defendant only stated that Plaintiff's lab reports "showed good and stable liver enzymes." (Id.) In his supporting brief, Plaintiff asserts that he was seen six times by Defendant from September 2008 until November 2010. (Doc. no. 39, pp. 1-2.) In his

3

affidavit, Plaintiff asserts that he was told the same thing at every visit with Defendant,[3] and at no point did they ever discuss treatment options or the possibility of Plaintiff seeing a specialist. (Doc. no. 38, Pl.'s Aff. ¶ 2.)

Plaintiff also states that he was scheduled to see Dr. Sightler on July 22, 2009, but his appointment was rescheduled for a few months later. (Doc. no. 36, Ex. A, pp. 9-10.) Similarly, Plaintiff states that Defendant refused to renew his "prescriptions" for ibuprofen and skin ointment in September 2009; however, Plaintiff cannot recall if that was due to his appointment being rescheduled, as was the case in July 2009. (Id. at 10-11.) In his deposition, Plaintiff states that half of the damages he seeks are for the missed appointment in July 2009, and the other half are for the "possibly" missed appointment in September 2009. (Id. at 13.)

According to Defendant, he did not ignore any serious medical condition of Plaintiff's that required medical diagnosis or care- including Hepatitis C. (Id., Sightler Aff. ¶ 12.) Additionally, Defendant states that treatment for Hepatitis C is not warranted unless liver studies show a need for drug therapy. (Id. ¶ 9.) Defendant states in his affidavit that Plaintiff has refused to undergo the necessary liver biopsy to obtain a definitive diagnosis of Hepatitis C and a "picture of [Plaintiff's] condition." (Id. ¶ 9.)

According to Laurie Franks, a physician's assistant at WCF, she met with Plaintiff on August 31, 2010, in the chronic clinic. (Id., Frank Aff. ¶ 3.) She states that Plaintiff denied having any abdominal pain or dark urine, and further examination was normal in regards to Plaintiff's liver issues and Hepatitis C. (Id. ¶ 5.) Ms. Franks also states that

---

[3] In his supporting brief, Plaintiff clarifies that Defendant indicated during each visit that Plaintiff's liver enzymes were "good and stable." (Doc. no. 39, p. 2.)

4

Plaintiff refused to undergo a "liver workup," including a liver biopsy. (Id. ¶¶ 3-4, 6.) Ms. Franks goes on to state that Plaintiff refused to sign the form indicating that he would not accept diagnosis or treatment.[4] (Id. ¶ 4.) Plaintiff denies refusing treatment for his Hepatitis C, and states that any indications in his medical records to the contrary are incorrect. (Id., Ex. A, pp. 5-7.) As far as any treatment needed for Plaintiff's Hepatitis C, Defendant states that, based on the studies done, as well as Defendant's observations, no treatment was known to be needed for Plaintiff's Hepatitis C at the time of Defendant's affidavit in September 2010. (Id., Sightler Aff. ¶ 12.)

Although Plaintiff did not assert any specific harm as the result of the alleged lack of treatment for his Hepatitis C in his complaint, his March 11 objection, or his motion for summary judgment and brief in support (see doc. nos. 1, 19, 38, 39), he did state in his deposition, that he had lost 16 pounds since his incarceration in 2000, and that, a few months before his deposition in June of 2010, he had urinated blood. (Doc. no. 36, Ex. A, pp. 1, 13-15.) Defendant states in his affidavit that Plaintiff had been thin, but stable, since he arrived at WCF and that Plaintiff had been diagnosed and treated for a urinary tract infection, which would explain any possible blood or discoloration of urine. (Id., Sightler Aff. ¶ 11.) Defendant also states that urinating blood is not a symptom expected of Hepatitis C, especially in a patient as otherwise healthy as Plaintiff. (Id.)

---

[4]Included with Ms. Frank's affidavit is a copy of the refusal of treatment form that Plaintiff refused to sign along with notes from the visit supporting the statements in Ms. Frank's affidavit. (Doc. no. 36, Frank Aff., Attach. 2-3.)

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Applicable substantive law identifies which facts are material in a given case.[5] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Id. at 608. Evidence presented by the movant is viewed

---

[5] The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

6

in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B.  Merits of Plaintiff's Claim

As noted above, the only remaining claim is Plaintiff's allegation that Defendant was deliberately indifferent to his serious medial need in violation of his constitutional rights by refusing to provide treatment for Plaintiff's Hepatitis C. To prevail on a claim of deliberate indifference to a serious medical need, Plaintiff must show: (1) that he had an objectively serious medical need, (2) that Defendant acted with deliberate indifference to that need, and (3) that his injury was caused by Defendant's wrongful conduct. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007); see also Thomas v. Bryant, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010) (noting that a plaintiff must "show a causal connection between the constitutional violation and his injuries" to prevail on any § 1983 claim).

To satisfy the requirement of showing an objectively serious medical need, a prisoner must show that his medical need "has been diagnosed by a physician as mandating treatment

7

or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert, 510 F.3d at 1326 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir.1994)). To show that Defendant was deliberately indifferent to his medical needs, Plaintiff must offer proof that Defendant: (1) was subjectively aware of a serious risk to Plaintiff's health, and (2) that Defendant disregarded that risk by (3) following a course of action which constituted "more than mere negligence." Id.

Furthermore, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal quotation and citation omitted). The Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good." Harris v. Thigpen, 941 F.2d 1495, 1510 (11th Cir. 1991) (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)). As the Supreme Court has explained:

> [A]n inadvertent failure to provide medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999) (explaining that medical malpractice cannot form the basis for Eighth Amendment liability); Harris, 941 F.2d at 1505.

8

Additionally, the Eleventh Circuit has consistently held that a mere difference in opinion between prison medical officials and the inmate as to the latter's diagnosis or course of treatment does not support a claim of cruel and unusual punishment. See Harris, 941 F.2d at 1505; Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989). That is, the burden of proving deliberate indifference cannot be met simply by arguing that an inmate wanted a different type of treatment. See Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments. . . ." (citation omitted)).

With these principles in mind, the Court turns its attention to the parties' cross motions for summary judgment on Plaintiff's claim. In his March 11 objection, Plaintiff alleged that Defendant had refused, and continued to refuse to treat Plaintiff's Hepatitis C. (See doc. no. 19.) In his motion for summary judgment, Plaintiff states that, during their appointments, Defendant failed to discuss treatment options, or refer Plaintiff to a specialist. (Doc. no. 38, Pl.'s Aff. ¶¶ 1-2.) It is well established that Hepatitis C qualifies as an objectively serious medical need. See Brown v. Johnson, 387 F.3d 1344, 1350-51 (11th Cir. 2004) (holding that the complete withdrawal of treatment for an inmate's HIV and hepatitis is sufficient to support a claim of deliberate indifference). However, it is not entirely clear that Plaintiff's lawsuit is actually based on the alleged refusal to treat his Hepatitis C. For example, Plaintiff openly admits in his deposition that the basis of his claim against Defendant in his original complaint (doc. no. 1) was that Defendant did not meet with him

to refill his medications for ibuprofen and skin ointment until some number of months[6] after Plaintiff arrived at WCF. (Doc. no. 36, Ex. A, p. 8.) Plaintiff further states that half of the damages he seeks are for an appointment in September 2009, which was either rescheduled, or during which Defendant refused to give Plaintiff ibuprofen and skin ointment. (Id. at 12-13.) Thus, at least half of the damages that Plaintiff seeks are for an incident which in no way involved refusal to treat his Hepatitis C.

If Plaintiff is able to demonstrate that his case concerns an objectively serious medical need, he has still utterly failed to show that Defendant acted with deliberate indifference towards that need. Plaintiff was given medical care in the chronic clinic since his arrival at WCF, and, during that time, Plaintiff's chief complaints are that there was some delay in seeing him upon his arrival, that two appointments were missed in a period of about two years, and that Defendant never discussed treatment options for Plaintiff's Hepatitis C, or the possibility of referring Plaintiff to a specialist. (Doc. no. 38, Pl.'s Aff. ¶ 1; doc. no. 36, Ex. A, pp. 11-13.) Yet, at the same time, Plaintiff also indicates that multiple diagnostic blood tests were done in regards to his Hepatitis C. (Doc. no. 38, Pl.'s Aff. ¶¶ 2-3.) Plaintiff also admits that Defendant told him on at least six occasions that his liver enzymes were "good and stable." (Id.; doc. no. 39, pp. 2-3.) In fact, nothing that Plaintiff says or alleges conflicts with Defendant's statement that, based on the studies done, as well as his observations, no treatment was known to be needed for Plaintiff's Hepatitis C. (Doc. no. 36, Sightler Aff. ¶ 9.)

---

[6] As stated above, in some instances Plaintiff claims that two months passed without an appointment, whereas at other times Plaintiff states that it was four months. (Doc. no. 38, Pl.'s Aff. ¶ 1; doc. no. 36, Ex. A, p. 8-9.)

Additionally, both Defendant and Ms. Frank stated, in sworn affidavits, that Plaintiff had refused diagnostic procedures necessary to determine Plaintiff's eligibility for treatment of his Hepatitis C. (Id. ¶ 5; Frank Aff. ¶¶ 4-6.) Defendant also stated that Plaintiff's medical records indicate that Plaintiff began refusing such procedures beginning in 2000. (Id., Sightler Aff. ¶ 5.) Plaintiff denies that he has refused any tests or treatment, despite medical records to the contrary. (Id., Ex. A, pp. 5-7.) Thus, the record fails to support Plaintiff's claim that Defendant acted with deliberate indifference towards his Hepatitis C.

What the record does show is that Defendant simply exercised his judgment as a medical professional faced with missing vital information due to Plaintiff's refusal to undergo the necessary diagnostic procedures. Although Plaintiff alleges that at least two appointments were missed or postponed, at no point has he established that Defendant refused him medical attention, or ignored a serious medical need. (Id. at pp. 8-10; Sightler Aff. ¶ 12.) Even assuming *arguendo* that the medical care provided by Defendant was somehow deficient, these assertions alone are insufficient to generate a dispute of material fact regarding whether Defendant was deliberately indifferent to Plaintiff's medical needs. Simply put, Plaintiff has merely outlined a difference of opinion between himself and Defendant as to how his Hepatitis C should be managed. Essentially, Plaintiff wants to bypass the necessary examinations and testing in order to skip straight to seeing a specialist about his Hepatitis C. As discussed, *supra*, this kind of disagreement falls well short of establishing that Defendant was deliberately indifferent to a serious medical need. See Harris, 941 F.2d at 1505; Waldrop, 871 F.2d at 1033.

Finally, Plaintiff also failed to connect any kind of harm to Defendant's alleged refusal to provide treatment for his Hepatitis C. Although Plaintiff states that he had lost

11

weight and, at one point, urinated blood, he failed to provide any support for his claim that these symptoms were related to his Hepatitis C, much less that they occurred due to a lack of treatment. Additionally, Defendant states in his sworn affidavit that Plaintiff's discolored urine was likely due to a urinary tract infection which Plaintiff had been treated for, and that Plaintiff, while skinny, had been stable since his arrival at WCF. (Doc. no. 36, Sightler Aff. ¶¶ 10-11.)

Thus, the record demonstrates that Plaintiff has failed to establish that Defendant acted with deliberate indifference towards Plaintiff's Hepatitis C, or that Plaintiff suffered any harm as a result- two essential elements to Plaintiff's Eighth Amendment claim. Therefore, Plaintiff's motion for summary judgment on his claim (doc. no. 38) should be denied, and Defendant's motion for summary judgment (doc. no. 36) should be granted.[7]

## IV. CONCLUSION

In sum, the Court **REPORTS AND RECOMMENDS** that Plaintiff's motion for summary judgment (doc. no. 38) be **DENIED**, that Defendant's motion for summary judgment (doc. no. 36) be **GRANTED**, that a final judgment be **ENTERED** in favor of Defendant, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 21st day of April, 2011, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[7] Defendant also argues that Plaintiff's claim is barred by the Prisoner Litigation Reform Act, as Plaintiff failed to make any allegations of physical harm resulting from the alleged deliberate indifference of Defendant. (Doc. no. 36, p. 12.) The Court's decision on the merits pretermits consideration of this additional argument.